UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK ALLEN,

        Plaintiff,                        CIVIL ACTION NO. 09-11281

     v.                                 DISTRICT JUDGE DAVID M. LAWSON

CORRECTIONAL MEDICAL         MAGISTRATE JUDGE MARK A. RANDON
SERVICES, INC.,

        Defendant.
_____/

**REPORT AND RECOMMENDATION GRANTING CORRECTIONAL MEDICAL SERVICES, INC.'S MOTION TO DISMISS (DKT. NO. 22) AND TERMINATING ALL OTHER PENDING MOTIONS (DKT. NOS. 25, 43, 44, 53, 54) AS MOOT**

**I. INTRODUCTION**

Plaintiff, a Michigan prisoner, sued Defendant Correctional Services Medical, Inc. ("CMS"), pursuant to 42 U.S.C. § 1983, alleging an Eighth Amendment denial of adequate medical care. Presently before the Court is the motion to dismiss of CMS. (Dkt. No. 22) CMS seeks dismissal on two grounds: (1) that Plaintiff failed to exhaust his administrative remedies against CMS, and (2) that Plaintiff failed to state a claim upon which relief can be granted under the Eighth Amendment. In accordance with 28 U.S.C. § 636(b)(1)(B), the matter has been referred to the undersigned for a Report and Recommendation. (Dkt. Nos. 3 and 8) For the reasons discussed below, it is recommended that the motion to dismiss be GRANTED on the

first ground – rendering the second moot. Consequently, it is also recommended that all pending motions in this case be terminated.[1]

## II. FACTS

### A. Background

#### 1. *Plaintiff's Complaint*

At all times relevant to this case, Plaintiff, Derrick Allen, has been incarcerated at the St. Louis Correctional Facility ("STF"). Plaintiff's *pro se* Complaint alleges that CMS denied him reconstructive surgery on his left hand, which "has no recognizable joint and has [a] deformity." (Dkt. No. 1) Plaintiff, who claims to be left-hand dominant, avers that three doctors (Drs. Sperling, Ikram and DaHann) "are in favor" of the surgery. (Dkt. No. 1)

#### 2. *The MDOC's Grievance Procedure*

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 22, Ex. A). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff

---

[1] This includes Plaintiff's Motion for Summary Disposition (Dkt. No. 53), which is precluded by his failure to comply with 42 U.S.C. § 1997(e)a (discussed below); Plaintiff's anticipated proposed amended complaint, which would be futile as it relates to CMS, and all other pending motions (Dkt. Nos. 43, 44, 53, and 54).

member involved. A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received.

In outlining what should be included in a grievance, the Policy requires, in part, that prisoners adhere to the following procedural rules:

> R. The issues should be stated briefly and concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and *names of all those involved in the issue being grieved are to be included*.

(Emphasis added).

### 3. *Plaintiff's Grievance*

On November 21, 2008, Plaintiff filed Grievance STF 08-11-00888-12D1 ("the Grievance") (Dkt. No. 22, Ex. D).[2] At Step I, the Grievance, in its entirety, read as follows:

> Prisoner claims he is forced to endure pain and suffering. Prisoner Allen 162043 underwent a __successful surgery, 5 of 08, at the Detroit Receiving Hospital. _____ extensive swelling at the palm of the left middle finger and left ring finger. A Consultation Request Report was done from RGC, Dr. Kyle L. Sperling indicating left hand is with significant deformity, advanced OA or RA involving the 3rd MCP joint, degenerative changes noted 3rd MCP without a recognizable joint remaining. A Referral to the proper channels was submitted. Patient is left-handed, injury effects dominant limb, hinders mobility. Patient complaints of constant pain & swelling that occurs when attempting daily task, which afflicts undue pain, suffrage, and stress. I have enclosed a copy of each procedural step from all parties contacted. Initial; RGC, STF, DWH, and Orthopedics Associates Of Michigan, Grand Rapids, MI. To my understanding, the Doctor's and Specialist's are in favor of

---

[2] This was the only grievance filed by Plaintiff, presumably related to his Complaint allegations.

>Corrective and/or Reconstructive Surgery. In accordance to MDOC
>Policy Directive 03.04 .100, Paq, QQ – Corrective and
>Reconstructive Surgery shall be authorized for a prisoner only if the
>primary purpose is to restore function. Prisoner appeals to the
>United States Constitution Eighth Amendment: in pursuit of relief.[3]

In the Grievance, Plaintiff does not mention the name of the party or parties against whom his grievance is directed. He does, however, reference procedural steps that were taken and apparently "attached to the back of his grievance."[4] While the general impression left by the Grievance is that Plaintiff was dissatisfied with not receiving reconstructive surgery on his hand, CMS is neither named nor mentioned anywhere on the Grievance form. This is noteworthy because the Grievance could have been directed toward any number of hospital or prison based medical staff who evaluated or treated Plaintiff's medical condition.

### 4.    *The Prison's Response to the Grievance and Plaintiff's Appeals*

At Step I, STF Registered Nurse J. Weippert summarized the Grievance as a denial of "adequate medical care." Weippert noted that Plaintiff had been seen by the Medical Practitioner ("MP") and evaluated by a specialist but that the Medical Services Advisory Committee ("MSAC") had denied his request. Therefore, the Grievance was denied at Step I.

---

[3] "____" represent blacked-out potions of the Grievance.

[4] These attachments were not included in the grievance chain provided by CMS. Plaintiff attached a document entitled "Consultation Request" to his response to CMS's motion (Dkt. No. 31). However, it is unclear whether this document was included in the "procedural steps" attached to the Grievance. Assuming its inclusion for purposes of this Report and Recommendation, the relevant portion of the Consultation Request is discussed *infra* at p. 9-10.

Although the Step I response mentioned specific entities – the MP and the MSAC – Plaintiff's Step II Appeal did not indicate that Weippert had identified the wrong parties and again made no mention of CMS.  Instead, Plaintiff complained of continued pain and the "missing joint" in his hand.

The Step II Grievance Response of STF was prepared by Julie Van Setters.  In denying the Grievance, Setters indicated that "[a] request for surgery was submitted by the medical practitioner (MP).  Review by the Medical Services Advisory Committee (MSAC) indicates surgery is not indicated now.  The Health Unit Manager (HUM) has been asked to schedule a grievance with the MP for discussion of his pain."  The response contained no reference to CMS.

Plaintiff's Step III Appeal stated that he was "being denied adequate medical care" but did not say by whom.  In response, STF's Quality Assurance Officer made the following determination:

> Grievant alleges he is being denied necessary surgery for his hand.
> All information presented upon appeal to Step III has been reviewed,
> including all electronic medical records.  Grievance has been assessed, evaluated,
> and treated by the Medical Practitioner.  A process is in
> place to allow an appeal to all CMS denials, grievant currently has an
> appeal in place by the Medical Practitioner and is pending.
> Disagreement with the medical judgment *of the Medical Practitioner*
> does not support claims for denial and mistreatment *by staff*.

(Emphasis added).  Although CMS was mentioned for the first time in this response, it is clear that the Quality Assurance Officer believed Plaintiff's complaints were directed toward the medical judgment of the MP and staff.  As such, the Grievance was denied at Step III.


### III. ANALYSIS

*A.     Standard of Review*

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266 (1994). However, prisoner suits, alleging constitutional deprivations while incarcerated, are subject to the additional prerequisite of satisfying the administrative exhaustion requirements of 42 U.S.C. § 1997e(a). *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

*B.     The Prison Litigation Reform Act*

 *1.     The Meaning and Purpose of Proper Exhaustion*

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting*, Pozo v. McCaughtry,* 286 F.3d

1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002). As the *Woodford* Court explained, the benefits of exhaustion are unattainable if prisoners ignore the rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the systems critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction.

*Woodford,* 548 U.S. at 95. Therefore, an incomplete or otherwise improper grievance, though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

The sanction for failure to exhaust is best illustrated by the Sixth Circuit's recent opinion affirming a district court's dismissal of a prisoner's §1983 claim. *Sullivan-El v. Pramstaller*, 2007 WL 2701949 (E.D. Mich.), *aff'd*, 316 Fed.Appx. 469 (6th Cir. 2009). In his grievance, Sullivan-El had complained that "Health services at NRF" had improperly denied him medication for his blood pressure and urinary problems. However, his subsequent lawsuit was filed against several individually named medical personnel. On reconsideration, the district court dismissed

the case for failure to exhaust administrative remedies as to the medical personnel, and Sullivan-El appealed.  The Sixth Circuit held:

> The Defendants moved for reconsideration, arguing that when Sullivan filed his grievance, MDOC policy explicitly required him to name each person against whom he grieved.  See Policy Directive No. 03.02.130. . . We agree and thus affirm. (Citations omitted)

*Sullivan-El*, 316 Fed.Appx. at *470.[5]  The MDOC policy referenced in *Sullivan-El* was a previous version of the Policy at issue herein and contains the identical language requiring prisoners to name each person involved with the grievance.  Indeed, the instant action is a far more compelling case for finding a failure to exhaust that *Sullivan-El*.  Sullivan-El's grievance arguably provided a general idea of the persons against whom he grieved – those involved with Health Services.  Here, however, Plaintiff's grievance provided no idea at all and, therefore, is even more deficient.

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints.  However, like the instant motion, failure to exhaust may still be raised as an affirmative defense.

### 2. *Plaintiff's Failure to Complain Against or Name CMS in the Grievance Violated the Policy*

Although Plaintiff timely filed and pursued the Grievance through Step III, he did not name or allege any wrongdoing against CMS.  Plaintiff offers two responses to these omissions: (1) his grievance was accepted for filing by the prison Grievance Coordinator and decided on the

---

[5] For Plaintiff's reference, the *Sullivan-El* decision is attached to CMS's Motion as Exhibit B.

merits, and (2) "Respondents knew that plaintiff was grieving Defendant, Correctional Medical Services." (Dkt. No. 31, p. 4) However, neither of these arguments are well taken.

First, the fact that prison staff, unaware that Plaintiff apparently intended to complain against CMS, accepted the Grievance for filing and resolved the Grievance on the merits – as to parties they believed were involved – further supports the analysis set forth above. Plaintiff's failure to follow the procedural rules and specifically name CMS is not excused by the prison's good faith attempt to address the Grievance. The prison still did not have a fair opportunity to consider a grievance against CMS. *Woodford*, 548 U.S. at 95.

Second, the document referenced by Plaintiff in support of his position that the prison knew his grievance was directed toward CMS is similarly unpersuasive. The document, entitled "Consultation Request" (and hand marked as Exhibit F), contains a note at the bottom that states in part "CMS/UM Reviewer response: 07/03/2008 **Criteria met.**" (Emphasis in original). (Dkt. No. 31) It appears that this document was prepared on or about July 2, 2008, *more than four months before Plaintiff filed the Grievance*. One can only suppose that if this notation was purportedly sufficient to alert the prison that the Grievance was directed toward CMS, then it is inconceivable that Plaintiff, who drafted the Grievance and was required to "name names" failed to identify CMS. A prison is not required to speculate about, or correctly guess, the party against whom a plaintiff has grieved. To the contrary, "proper exhaustion demands [a plaintiff's] compliance with an agency's . . . critical procedural rules." *Id*. at 90. The responses to Plaintiff's grievance and each of his appeals demonstrate that STF staff believed the Grievance was filed against either Plaintiff's physician at the facility or the MSAC, which denied the medical

provider's requests for surgery of Plaintiff's hand. Plaintiff's grievance appeals did nothing to correct this misconception. Therefore, since the Grievance failed to allege any involvement of CMS, much less name it, Plaintiff failed to exhaust his administrative remedies as to his claims against CMS, and dismissal of his case is the result.

Finally, it should be noted that in *Jones*, *supra*, the Supreme Court held that the PLRA does not require a prisoner to name all potential defendants in his grievances. *Jones*, 549 U.S. at 217-218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). However, *Jones* was based on a previous version of the Policy that did not require prisoners to name all persons involved in their grievances as it did at all times relevant to the Grievance. As in *Sullivan, supra*, the present Policy clearly states that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included."

## RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that CMS's Motion to Dismiss (Dkt. No. 22) be GRANTED and all other pending motions be terminated as moot.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report

and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                                       s/Mark A. Randon
                                                       MARK A. RANDON
                                                       UNITED STATES MAGISTRATE JUDGE

Dated:  December 14, 2009

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, December 14, 2009, by electronic and/or first class U.S. mail.*

                                                       *s/Melody R. Miles*
                                                     *Case Manager to Magistrate Judge Mark A. Randon*